UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                            )
JUDICIAL WATCH, INC.,       )
                            )
     Plaintiff,             )
                            )
     v.                     )    Civil Action No. 04-1643 (RWR)
                            )
FEDERAL BUREAU OF           )
INVESTIGATION,              )
                            )
     Defendant.             )
_____)
```

<u>MEMORANDUM OPINION AND ORDER</u>

Judicial Watch, Inc. sued the Federal Bureau of Investigation under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking disclosure of documents pertaining to the FBI's alleged role in flying members of the Saudi Royal family out of the United States in the days immediately after September 11, 2001.  In response, the FBI produced to Judicial Watch an explanatory declaration and 220 pages of agency documents and records —— many of which were partially or completely redacted and annotated with references to statutory exemptions —— and then moved for summary judgment.  Judicial Watch opposed the motion, contesting the validity of certain exemptions, asking for an immediate order directing the release of certain records, and arguing that the FBI disclosures did not fairly meet the requirements of the law.  Because the FBI's

- 2 -

disclosures in this case do not provide (1) an adequate
description of each discrete redaction, (2) a specific citation
to and explanation of the authority to refuse to disclose that is
correlated with each discrete redaction, and (3) sufficient
information to determine whether all reasonably segregable
information has been segregated and disclosed, the FBI's motion
for summary judgment will be denied and the FBI will be directed
to file disclosures that fairly meet the requirements of Vaughn
v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), Mead Data Central, Inc.
v. Department of the Air Force, 566 F.2d 242 (D.C. Cir. 1977),
and their progeny.

BACKGROUND

The October 2003 issue of *Vanity Fair* magazine contained an
article entitled "Saving the Saudis" that raised questions about
the role of the FBI, the State Department and the President in
evacuating members of the extended Bin Laden and Saudi royal
families in the days immediately following the attacks on the
World Trade Center towers and the Pentagon on September 11, 2001.
Shortly after the article appeared, Judicial Watch sent a FOIA
request to the FBI, seeking access to records relating to the
following subjects:

> a.  The decision to allow subjects of the Kingdom
> of Saudi Arabia, including but not limited to members
> of the House of Saud and/or members of the Bin Laden
> family, to leave the United States within 10 days of
> the terrorist attacks of September 11, 200[1].

- 3 -

        b.  Flights containing subjects of the Kingdom of
Saudi Arabia, including but not limited to members of
the House of Saud and/or members of the Bin Laden
family, allowed to leave the United States between
September 11, 2001 and September 15, 200[1].

        c.  A September 13, 2001 flight between Raytheon
Airport Services, Tampa International Airport and Blue
Grass Airport in Lexington Kentucky.

        d.  The decision to allow subjects of the United
Kingdom of Saudi Arabia, including but not limited to
members of the House of Saud and/or members of the Bin
Laden family, to leave the United States by airplane
after September 11, 2001 without being interviewed by
the FBI.

        e.  All communication between the CIA, and/or
FBI, and or FAA and/or the State Department and the
Executive Office of the President (EOP) and/or the
Office of the Vice President and/or any agent or
representative of President George W. Bush concerning
the decision to allow subjects of the Kingdom of Saudi
Arabia, including but not limited to the members of
the House of Saud and/or members of the Bin Laden
family, to leave the United States by airplane after
September 11, 2001.

        f.  A list of all subjects of [the] Kingdom of
Saudi Arabia, including but not limited to members of
the House of Saud and/or members of the Bin Laden
family permitted to leave the United States between
September 11th, 2001 and October 1, 2001.

(Compl., Ex. 1, FOIA Request, Oct. 8, 2003; see also Compl.,

Ex 2.)  The *Vanity Fair* article was attached to the FOIA request

and Judicial Watch told the FBI that it intended to disseminate

any information it obtained from the request to members of the

media.  (Compl., Ex. 1.)

    The FBI initially denied Judicial Watch's request in its

entirety, asserting that the requested documents were entirely

- 4 -

exempt from production as "records or information compiled for law-enforcement purposes" that, if produced, "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Judicial Watch's appeal to the Department of Justice ("DOJ") was denied.  Judicial Watch filed this suit seeking a declaratory judgment and an injunction prohibiting the FBI from continuing to withhold records responsive to its FOIA request.

In the course of this litigation, the FBI identified more than 200 pages containing material responsive to Judicial Watch's FOIA request and prepared an annotated production, withholding a substantial amount of information as to which it asserted various statutory exemptions.  (See Def.'s Mot. for Summ. J., Decl. of Nancy L. Steward, Apr. 8, 2005 ("Steward Decl."), Ex. A.)  With the annotated production, the FBI submitted a declaration providing general explanations for the types of information withheld.  (See Steward Decl.)

The parties remain in dispute as to whether the FBI's annotated production and the accompanying Steward declarations together meet the requirements of specificity and segregability set forth in Vaughn and Mead Data, and whether the FBI has justified its exemptions under 5 U.S.C. §§ 552(b)(1) (relating to information that is classified by Executive Order to protect national interests in defense or foreign policy), (b)(5)

(relating to inter-agency or intra-agency memoranda or letters that would not be available by law to a party other than an agency in litigation with the agency), (b)(6) (relating to personnel, medical or similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy), and (b)(7)(C) (relating to records or information compiled for law enforcement purposes if disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy).

## DISCUSSION

Summary judgment is permitted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In a FOIA suit, an agency is entitled to summary judgment once it bears its burden of demonstrating that no material facts are in dispute and that all information that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). In other words, here, the FBI must show that there is no genuine issue that it properly invoked the statutory exemptions authorized by §§ 552(b)(1), (b)(5), (b)(6), and (b)(7)(C) to

withhold information, and that all non-exempt information that is reasonably segregable has been segregated and disclosed.

The FOIA was intended "to permit access by the citizenry to most forms of government records," Vaughn, 484 F.2d at 823, and created a judicially enforceable public right to compel an agency to disclose information. EPA v. Mink, 410 U.S. 73, 80 (1973). To protect competing privacy interests for both agencies and individuals, Congress balanced the right to information with nine statutory exemptions that were "plainly intended to set up concrete, workable standards for determining whether particular material may be withheld or must be disclosed." Id. at 79. However, because the clear legislative intent behind the FOIA was to "assure public access to all governmental records whose disclosure would not significantly harm specific governmental interests[,] . . . the policy of the Act requires that the disclosure requirement be construed broadly, [and] the exemptions narrowly." Vaughn v. Rosen, 523 F.2d 1136, 1142 (D.C. Cir. 1975) (quotation marks and citations omitted). Accordingly, a document that contains exempt material cannot be withheld in its entirety if non-exempt material in that document can reasonably be segregated and disclosed. "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that non-exempt portions

- 7 -

of a document must be disclosed unless they are inextricably
intertwined with exempt portions." Mead Data, 566 F.2d at 260.
Thus, if the agency locates records but withholds all or part
pursuant to an exemption, it must assert one or more of the nine
statutory exemptions codified at 5 U.S.C. § 552(b) as
justification and correlate the exemption with the precise
segment of non-disclosed information to which it applies.

Compliance with the FOIA is tested in the adversary system
upon a challenge by the party denied access to the records it
seeks.  In order for a FOIA challenge to be meaningful, the
agency resisting disclosure of the records must disclose
sufficient information about the records to permit a FOIA
plaintiff to make an informed opinion about whether the agency
has complied with the law.  To be legally sufficient, an agency
response to a FOIA request must provide information sufficiently
precise and explanatory that a requestor can "present its case
effectively" to the court.  Mead Data, 566 F.2d at 251; see also
Vaughn, 484 F.2d at 823-24, 828 (noting that disclosing
sufficient information will permit a more adequate adversary
testing of the issues).

Where, as here, a FOIA plaintiff challenges an agency's
assertion of FOIA exemptions, a court is required to conduct a *de
novo* review of the application of the exemptions.  5 U.S.C.
§ 552(a)(4)(B).  While an *in camera* inspection of the documents

- 8 -

containing the information at issue may be undertaken at the court's discretion, *in camera* inspections are not advisable in light of the judicial resources such a task requires.  Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978); see also Weissman v. CIA, 565 F.2d 692, 698 (D.C. Cir. 1977) (stating that a court should undertake an *in camera* inspection of documents only where the agency's disclosures are inadequate to support a *de novo* review).  Rather, a court should be able to conduct its *de novo* review on the basis of the agency's disclosures and affidavits. The government's submissions should "provide a reviewing court with sufficient information to determine, without the disclosure of actual documents, whether information withheld by an agency falls within the claimed FOIA exemption." Voinche v. FBI, 412 F. Supp. 2d 60, 65 (D.D.C. 2006).  The agency's disclosures and affidavits must "provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." Mead Data, 566 F.2d at 251.  "[I]t is important that the affidavit indicate the extent to which each document would be claimed as exempt under each of the exemptions.  The courts cannot meaningfully exercise their responsibility under the FOIA unless the government affidavits are as specific as possible." Ray, 587 F.2d at 1197.

A "sweeping and conclusory citation of an exemption" does not satisfy the burden the law places on an agency in receipt of a FOIA request.  <u>Mead Data</u>, 566 F.2d at 251.  An agency's FOIA response must be sufficiently precise and explanatory that a court can "effectively and efficiently . . . evaluate the factual nature of disputed information."  <u>Vaughn</u>, 484 F.2d at 826. Without sufficiently specific and detailed information, neither a reviewing court nor an individual seeking agency records can meaningfully evaluate an agency's response to a request for government records.  <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 947 (D.C. Cir. 1979).

In sum, the agency's explanatory submissions "must adequately describe each withheld document or deletion from a released document" and "must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant" in order to permit a "court to conduct a meaningful *de novo* review of the agency's claim of an exemption."  <u>Voinche</u>, 412 F. Supp. 2d at 65.  Where disclosures are not sufficiently detailed to permit a meaningful *de novo* review, a court may order the agency to submit more detailed disclosures.  <u>Id.</u> (quoting <u>Coleman v. FBI</u>, 1991 WL 333709, *1 (D.D.C. 1991).

- 10 -

The FBI's 220-page[1] annotated production consists of 21
pages produced without redaction, 85 pages produced completely
redacted, and the rest produced with partial redactions.
Redactions are marked with citations to exemptions noted on the
document itself, most often in the margins.  In most instances
where the FBI asserts that §§ 552(b)(6) or (b)(7) authorizes non-
disclosure, the FBI employs a subcategory notation system of its
own making that indicates whether the exemption relates to
personal identifiers or contact information for agency staff,
persons "merely mentioned" but not interviewed, persons
interviewed by the FBI, or persons in whom the FBI had an
investigative interest.  (Steward Decl. ¶ 15.)

The accompanying Steward declaration describes broad
categories of information for which an exemption is asserted and
the FBI's general rationale for asserting the exemption as to
that type of information.  For example, the declaration explains
that the FBI withheld names of special agents and support
personnel, and that it asserts a particular variant, subcategory
1, of § 552(b)(6) as to such information.  (Steward Decl. ¶ 47.)
It also asserts the deliberative process privilege under
§ 552(b)(5) for four documents withheld in their entirety:

---

[1]  The production runs from page 1 through page 221, but
skips page 160.  Six of the 220 pages are place-holder pages,
purporting to represent exact duplicates of other, specifically
identified, pages in the production.

- 11 -

(1) "a draft of an internal report detailing the FBI's actions
taken to investigate the allegations contained in a *Vanity Fair*
magazine article" (Steward Decl. ¶ 39), (2) a set of
deliberations based on interviewing individuals leaving the
United States (id. ¶ 40), (3) an email about the deliberations
(id. ¶ 41), and (4) "a document which contains counterpoints that
were prepared to address each allegation raised in the *Vanity
Fair* article."  (Id. ¶ 43.)

I.   ADEQUATE DESCRIPTION OF EACH REDACTION

     An agency "must adequately describe each withheld document
or deletion."  Voinche, 412 F. Supp. 2d at 65 (requiring an
adequate description of the nature of the redacted information
and an explanation of why a stated exemption is relevant).  The
FBI's disclosures do not describe the nature of the material
contained in each of the withheld documents or discrete
redactions.  For the 85 pages that are wholly redacted without
any description of their content, the absence of a description
deprives the court, not to mention the plaintiff, of any basis
for evaluating whether the withheld material properly falls
within the claimed exemptions.

     For example, if the large whole-page blocks of redacted
information on pages 87, 88, 89, and 90 of the annotated
production conceal only names and/or other unique personal
identifiers of individuals that were merely mentioned but not

- 12 -

interviewed by the FBI and persons of investigative interest to
the FBI, then the exemptions noted might be proper.  However,
there is no statement by the agency that establishes that the
redacted material contains only names and other personal
identifiers and, therefore, there is no possibility of a
meaningful *de novo* review of the agency's asserted exemptions.

The Steward declaration provides a brief description of each
of the four documents that were withheld in their entirety under
the deliberative process privilege, but leaves out certain
descriptive basics, impeding proper *de novo* review.  For example,
because the descriptions do not indicate the length of the four
entirely withheld documents, it is not possible to determine
whether pages withheld in their entirety belong to those four
documents or to some other document which may not be adequately
described or for which such whole-page redactions are not
satisfactorily explained.

In some instances, the annotated production discloses
contextual information describing the information redacted.  For
example, on page 5 of the production, where a blank is preceded
by the designation "SA," an abbreviation for "Special Agent," it
is reasonable to infer that the redacted information is a proper
name.  Or, where a column is headed "Name," as it is on page

- 13 -

199,[2] it is reasonable to infer that the redaction below the header conceals a list of names.  However, contextual clues are not uniformly available or telling.  In any case, guesswork is not a proper foundation for a *de novo* review.  In a *de novo* review, a court should be able to rely on sworn statements that provide a description of the nature of the information contained in each discrete redaction.

The notation system the FBI employs in some instances incorporates a description of the redacted information.  For example, it indicates in some instances that the information relates to persons interviewed or to persons not interviewed but merely mentioned.  (Steward Decl. ¶ 15.)  However, the exemptions noted in the FBI's annotated production are not uniformly specific, and therefore fail in some instances to demonstrate with sufficient precision why the exemption is relevant.  For example, on pages 35, 91, and 92, the FBI departs from its usual notation scheme of using subcategories for exemptions under §§ 552(b)(6) and (b)(7)(C), leaving no indication as to whether the redacted information relates to investigative subjects, interviewees, persons mentioned but not interviewed, or staff of various agencies in various roles.  In such instances, because the FBI has not provided a description of the nature of the

---

[2] References in the remaining text of this opinion to specific page numbers are references to specific pages in the annotated production.  (See Steward Decl., Ex. A.)

- 14 -

specific redacted information from that page, there is no basis
on which to make a meaningful determination of whether the FBI's
asserted exemption is proper.

II.  CORRELATING REDACTIONS AND EXEMPTIONS

     An agency must "state the exemption claimed for each
deletion or withheld document, and explain why the exemption is
relevant." Voinche, 412 F. Supp. 2d at 65.  In the absence of
precise correlation, an agency's disclosures effectively amount
to no more than impermissibly vague, "sweeping and conclusory"
citations of exemptions.  Mead Data, 566 F.2d at 251.  In its *de
novo* review, a court must be able to know the nature of the
contents of a specific redaction and associate that redaction
with a specific exemption.  The disclosures the FBI has made in
this case are insufficient to allow such a review.

     In many instances throughout the annotated production, it is
not possible to associate a specific exemption with a specific
redaction.[3]  For example, on page 46, a page from which all
information has been redacted, seven empty rectangles presumably
indicate discrete redactions with the larger redaction covering
the entire page.  Three of the seven discrete redactions are

---

     [3]  For an example of adequate descriptions of discrete
redactions correlated with specific exemptions, see Declaration
of William C. Little, Apr. 26, 2006, Exhibit O, filed at Dkt. 31
in James Cole v. United States Department of Justice et al.,
Civil Action No. 05-674 (RWR), available for viewing and printing
on PACER.

- 15 -

clearly marked as information classified at the secret level,
which, relying on the Steward declaration, indicates that the FBI
asserts § 552(b)(1) as to this information.  In the left margin
of the page, however, notations invoke exemptions under
§§ 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(F), as
well.  It is not possible to determine on the basis of the
information the FBI provided whether the exemptions asserted in
the margin apply to the entire page or only to a discrete portion
and, if the latter, which exemption applies to which discrete
portion, or to multiple portions.  On page 62, another page from
which all information has been redacted, an empty rectangle
covering the top half of the page completely encloses another
empty rectangle on the extreme right side.  Beneath the larger
rectangle, in the left one-third of the page, notations assert
exemptions under §§ 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(F).
Yet, there is no way to know whether the asserted exemptions
apply equally to all the information redacted or to only one
rectangle or the other, or just what difference is signified by
the rectangle within the rectangle.  Similarly, page 25 consists
of a large blank rectangle containing seven smaller blank
rectangles.  There are four exemption notations in the top
margin, but no way to discern which exemption applies to which
rectangle.  Shortcomings of this type are legion in the annotated
production.

- 16 -

Inferences based on the proximity of the marginal notations in this annotated production are not warranted, even where proximity can be discerned as pages 94 and 199 demonstrate.  On pages 94 and 199, the unredacted information suggests that of 23 individuals, 20 individuals were interviewed by the FBI and 3 were not.  The exemption notation closest to the list of 23 individuals is the exemption specifically intended for persons "merely mentioned," not the notation for those interviewed.  The notation referring to the exemption for those interviewed is placed near the footnotes to that list of names, which apparently provide additional information about two of the individuals not interviewed and one that was.  In addition, in many instances, proximity to any defined portion of redacted information is itself equivocal.  (See, e.g., pages 33, 35, and 86.)  In many other instances, an inference is unwarranted because there is no contextual information or description of the contents that would provide any basis for drawing an inference.

III. SEGREGATED INFORMATION DISCLOSED

The FBI disclosures do not provide sufficient information to permit a meaningful assessment of whether all reasonably segregable information has been segregated and disclosed.  On its face, the FBI's implied assertion that absolutely nothing in a lengthy document that purports to discuss point-by-point an article published in the popular press can be reasonably

segregated and disclosed strains credulity.  The law requires the
agency to demonstrate that the exempted information is so
entangled with the non-exempt information that it cannot be
reasonably segregated.  The FBI has not done so in this case.

IV.  ERRORS IN THE AGENCY'S DISCLOSURES

        Other errors in the agency's disclosures raise serious
concerns as to the accuracy and thoroughness of the agency's
exemption and segregability determinations.  The Steward
declaration contains several errors discernible even from the
limited information provided.  First, the annotated production
consists of 220 pages, not 213 as the Steward declaration states
(Steward Decl. ¶ 3), and not 221, as the pagination suggests.
Second, although page 160 is missing, that fact is neither
acknowledged nor explained.  Third, the Steward declaration
states that its Exhibit B contains four reprocessed pages
reflecting that it was withdrawing its assertion of various
exemptions originally asserted in its Exhibit A.  (Steward Decl.
¶ 3 n.3.)  Yet, a comparison of the four pages in Exhibit B with
what are, presumably, their predecessor counterparts in
Exhibit A, reveals no changes with respect to two (pages 161 and
208) of the four reprocessed pages.  Fourth, the Steward
declaration states that the FBI is asserting exemption (b)(7)(F)
as to information on page 33, yet there is no corresponding
notation on that page in the annotated production.  (<u>Cf.</u> Steward

- 18 -

Decl. ¶ 75.)   Fifth, the Steward declaration states that 74 pages were withheld in accord with the deliberative process privilege under § 552(b)(5).   (Steward Decl. ¶ 39.)   Yet, only 72 such pages are expressly identified (Steward Decl. ¶ 44), and neither figure matches the citations to the (b)(5) exemption in the annotated production.   These errors and others, discovered not as a result of a systematic search for errors but in the course of attempting a *de novo* review, raise concerns about additional errors that may exist but are not detectable because of the limited information disclosed.

### CONCLUSION AND ORDER

The FBI's 220-page annotated production and accompanying Steward declaration together do not, as they must, provide sufficient detail or precision about the withheld information to permit a meaningful *de novo* review of the exemptions the FBI asserts.   <u>Vaughn</u>, 484 F.2d at 826.   Because the FBI's disclosures do not adequately describe each redaction, specifically and precisely correlate an exemption with a redaction, explain the exemption's relevance to the redacted information, <u>Voinche</u>, 412 F. Supp. 2d at 65, and demonstrate that all reasonably segregable information has been segregated and disclosed, <u>Mead Data</u>, 566 F.2d at 260, the FBI's motion for summary judgment will be denied.   Accordingly, it is hereby

- 19 -

ORDERED that the FBI's motion for summary judgment be, and hereby is, DENIED.  It is further

ORDERED that the FBI be, and hereby is, DIRECTED to submit on or before December 15, 2006, proper disclosures that contain none of the deficiencies described above.

SIGNED this 15th day of November, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge